656

JACK D. HOUGHTON, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6620–66.    Filed August 8, 1967.

*Warde H. Erwin*, for the petitioner.
*Harold E. Patterson*, for the respondent.

DAWSON, *Judge:* On February 10, 1967, respondent filed a motion to dismiss the petition in this proceeding for lack of jurisdiction because it was not filed within 90 days after the mailing of the notice of deficiency, as provided by section 6213(a), I.R.C. 1954.[1] On February 17, 1967, the Court entered an order stating that the case would be dismissed unless the petitioner filed written objections to respondent's motion. On March 6, 1967, the petitioner filed his objections to the motion together with certain pertinent exhibits. Pursuant to the Court's order, a hearing on the motion was held in Portland, Oreg., on April 17, 1967. At the hearing the parties submitted a stipulation

[1] All references herein are to the Internal Revenue Code of 1954 and the regulations promulgated thereunder unless otherwise indicated.

of facts and the Court heard the testimony of five witnesses. At the conclusion of the April 17 hearing respondent's motion was taken under advisement and the parties were requested to submit briefs on the legal issues involved.

The issues for decision are:

(1) Was the notice of deficiency dated June 8, 1966, mailed to petitioner at his last known address in compliance with the provisions of section 6212?

(2) Do the provisions of Public Law 89-332 (5 U.S.C.App. secs. 1012 and 1013) apply so as to require a copy of the notice of deficiency to be sent to petitioner's attorney where only a general power of attorney is filed with respondent prior to the mailing of the deficiency notice?

(3) Does the Court have jurisdiction of this proceeding?

### FINDINGS OF FACT

The stipulated facts and exhibits are incorporated herein by this reference. Pertinent facts necessary for the resolution of the issues presented are set forth below.

Jack D. Houghton (herein called petitioner) was a legal resident of Portland, Oreg., at the time he filed his petition in this proceeding.

An envelope containing a statutory notice of deficiency was sent by certified mail on June 8, 1966, to the petitioner at 6325 S.W. Alfred Street, Portland, Oreg. 97219. The notice determined deficiencies and additions to tax for the years 1958, 1959, and 1960. A copy of the notice of deficiency was not mailed at that time to his attorney, Warde H. Erwin.

Lloyd Brown, a letter carrier employed by the U.S. Post Office Department, attempted to deliver on June 9, 1966, the certified mail to petitioner at 6325 S.W. Alfred Street, Portland, Oreg. 97219, by knocking at the front door. Finding no one at home, he filled out a yellow form, called a notice of certified mail, informing petitioner that a piece of certified mail was awaiting him at the post office. Lloyd Brown left this notice of certified mail in the mailbox of petitioner at 6325 S.W. Alfred Street. This is the customary post office procedure in handling certified mail. The certified mail, which was the statutory notice of deficiency, was not picked up by petitioner at the post office. On June 27, 1966, it was returned to respondent marked "Unclaimed."

On and after March 19, 1966, respondent had on file in his Portland office a general power of attorney (Treasury Department Form 2848) signed by petitioner appointing Warde H. Erwin as his attorney-in-fact. The power of attorney was signed by petitioner on March 17, 1966. His signature was not notarized or witnessed and there was no certification by an enrolled attorney or agent in lieu of witnessing or notariza-

tion. This power of attorney did not contain a request that all correspondence addressed to petitioner be sent to his attorney but only that copies thereof be sent to his attorney. This power of attorney was sent to respondent's Portland office by a letter dated March 18, 1966, addressed to revenue agent A. Carrier. By mistake another copy of the general power of attorney which was properly signed and notarized was kept in the office files of Warde H. Erwin and was never sent to or received by respondent.

On April 4, 1966, requests for extensions of the statutory period of limitation on assessment were mailed to petitioner by respondent's chief of the audit division. These were signed by petitioner and given to Warde H. Erwin. They were not delivered to respondent. Several times in March and April 1966 Erwin contacted revenue agent Carrier or vice versa.

On July 21, 1966, Erwin wrote a letter to petitioner stating that he had heard nothing further from respondent and that it was his belief the matter had been successfully terminated. A statement for services rendered was enclosed with the letter.

The deficiencies and additions to tax were assessed by respondent on October 14, 1966, and notices thereof were received by petitioner on October 18, 1966.

By letter dated October 18, 1966, Curtis H. Levin advised respondent's Portland office that petitioner had not received the notice of deficiency dated June 8, 1966. In the same letter he sent an additional power of attorney dated October 18, 1966, properly signed and notarized which appointed Warde H. Erwin and Curtis H. Levin as attorneys-in-fact for petitioner. On or about November 17, 1966, Levin received a copy of the notice of deficiency dated June 8, 1966, with a date stamp of September 28, 1966, on the transmittal letter in the upper right-hand corner. This was the first time the notice of deficiency was received by petitioner. The reason why the date of September 28, 1966, appeared on the notice of deficiency is that once a deficiency notice is mailed to a taxpayer one of respondent's clerks stamps a date in the upper right-hand corner of the file copies of the transmittal letter accompanying the notice. The date stamp is not less than 90 nor more than 150 days from the date of mailing the notice of deficiency, which are the dates between which assessment of the tax is made. The 90-day period is to allow for a petition to be filed in the Tax Court. Here September 28, 1966, was the "tickler" date stamped on the copies by respondent's clerk. This was 114 days after the notice of deficiency was mailed. On that day, since no petition had been filed with the Tax Court, the file was reviewed, closed out, and sent to the Collection Division for assessment.

Petitioner resided at 6325 SW. Alfred Street, Portland, Oreg., from 1957 to 1961 when he was divorced from his wife. He temporarily

left that address for two or three short periods of time in 1961. Since 1962 he has continuously resided at 6325 SW. Alfred Street, Portland, Oreg., and that is his present address. Petitioner receives all his mail from his attorney, Warde H. Erwin, at 6325 S.W. Alfred Street, and he received several letters from him at that address in 1966. Petitioner used the address of 6325 SW. Alfred Street on his Federal income tax returns. He has executed consents fixing periods of limitation upon assessment of income tax on several occasions. All but one of these consents, which was signed in 1962, used the address of 6325 SW. Alfred Street. The consent executed in 1962 used a temporary business address of petitioner which was never used again. The powers of attorney executed by petitioner in March and October of 1966 used the address of 6325 SW. Alfred Street. Petitioner's sworn petition to this Court alleges his residence address to be 6325 SW. Alfred Street.

Petitioner has never requested or directed any agent of respondent to change his address from 6325 SW. Alfred Street, Portland, Oreg., to any other address.

Petitioner's last-known address is and was at the time the notice of deficiency was mailed to him on June 8, 1966, 6325 SW. Alfred Street, Portland, Oreg. 97219.

The petition in this case was mailed on December 20, 1966, and was filed with the Tax Court on December 22, 1966, which was 197 days after the deficiency notice was mailed.

OPINION

*I*

We must first consider whether respondent complied with the statutory requirement of mailing the notice of deficiency to petitioner by certified mail at his last-known address.

Section 6212(a), I.R.C. 1954, provides that when the Secretary or his delegate determines there is a deficiency in income tax he is authorized to send notice of such deficiency by registered or certified mail to the taxpayer. Section 6212(b)(1) provides that it shall be sufficient if the notice of deficiency is mailed to the taxpayer at his last-known address. Section 6213(a) provides that a petition must be filed with the Tax Court within 90 days from the date of mailing the notice of deficiency. Unless a petition is filed or mailed within such 90-day period this Court does not acquire jurisdiction of the case. *Vibro Mfg. Co.* v. *Commissioner*, 312 F. 2d 253 (C.A. 2, 1963); *Estate of Frank Everest Moffat*, 46 T.C. 499 (1966).

There is no dispute that the notice of deficiency was mailed to petitioner by certified mail on June 8, 1966, at 6325 SW. Alfred

Street, Portland, Oreg. 97219. Although the envelope containing the notice of deficiency was not physically left at that address, the letter carrier attempted to deliver it. On June 9, 1966, he knocked at the door of 6325 SW. Alfred Street, but found no one at home. Letter carriers have instructions not to leave certified mail at an address unless someone there signs for it. Finding no one at home, the letter carrier prepared a notice of certified mail informing petitioner that certified mail was being held for him at the post office where he could call for it. The postal carrier then left the notice in the mailbox at 6325 S.W. Alfred Street, made notations on the envelope as to his attempted delivery and returned the envelope and contents to the post office. The letter was never picked up and on June 27, 1966, it was returned to the sender (respondent) marked "unclaimed." The fact that the notice of deficiency was not actually received by the petitioner is immaterial. There is nothing in the statute requiring actual receipt of the notice by the taxpayer. See *Brown* v. *Lethert*, 360 F. 2d 560 (C.A. 8, 1966), where the taxpayer attempted to enjoin collection of the tax based upon his failure to receive a notice of deficiency mailed to him by certified mail at his home but not received by him. In that case, since no one was home, the postman also left a notice of certified mail at the taxpayer's home but the taxpayer did not respond and pick up the notice of deficiency at the post office and it was returned to the Internal Revenue Service. The facts of mailing in the *Brown* case are identical to those present in this case. See also *Cohen* v. *United States*, 297 F. 2d 760, 772 (C.A. 9, 1962); and *Luhring* v. *Glotzbach*, 304 F. 2d 556 (C.A. 4, 1962).

The dispute here is centered upon whether 6325 SW. Alfred Street was the petitioner's last-known address on June 8, 1966. Respondent says it was and the petitioner maintains that it was not. We agree with the respondent. In our opinion the evidence clearly shows that such address was petitioner's last-known address and is now and has been his only known address for several years. He has resided at 6325 SW. Alfred Street continuously since 1957, with the exception of a few months in 1961 when he and his wife were securing a divorce. He has resided at that address without any interruption since 1962. He has used that address on his Federal income tax returns. He executed consents to extend the statutory period for assessment for the years in issue which used that address except for one which utilized a temporary business address in 1962. He executed powers of attorney in March and October 1966 using that address. He has received mail sent to him by respondent at that address. He testified that his attorney always sent his mail to that address. He also testified that it was his residence address and in his sworn petition to this Court he alleged 6325 SW. Alfred Street, Portand, Oreg., to be his residence address. Cf. *Bergfeld* v. *Campbell*, 290 F. 2d 475 (C.A. 5, 1961).

Petitioner claims that he changed his last-known address by so stating to respondent's revenue agent. Yet nowhere in the record is there any evidence of such a conversation. Petitioner testified he met with, or talked on the telephone to, the revenue agent on five occasions. The first meeting was in 1961 and no conversation was had concerning a change of address. Shortly after the first meeting, the revenue agent called petitioner and again no discussion was had concerning a change of address. Petitioner did not meet with the revenue agent again until March 7, 1966. Again nothing was said about petitioner's address. He subsequently received two telephone calls from the revenue agent. Petitioner testified he told the revenue agent at that time that for further information he could call his attorney. Petitioner then testified, "That was the extent of my conversation to date." Petitioner never heard from him after that date. Petitioner did not testify that he requested respondent to change his last-known address. The revenue agent denied he had received any such request. In short, there is no evidence to substantiate the petitioner's claim.

Even if we treat the incomplete general power of attorney as valid,[2] it was not sufficient to change the last-known address of petitioner to his attorney's address or to any other address. The power of attorney does not indicate a change of address for petitioner. To the contrary, it states that the petitioner's address is 6325 SW. Alfred Street, Portland, Oreg., which is the same address to which the notice of deficiency was mailed. Nor does it purport to authorize the mailing of the notice of deficiency to his attorney. One paragraph in the power of attorney states that *copies of correspondence* addressed to petitioner should be sent to his attorney. This does not authorize the mailing of an original document to his attorney. Such copies are a matter of courtesy and in no way affect the mailing requirements of section 6212.

Respondent recognizes that a proper direction in a valid power of attorney may effect a change of last-known address. Cf. *D'Andrea* v. *Commissioner*, 263 F. 2d 904 (C.A.D.C. 1959). However, the printed power of attorney form that requests *copies* of correspondence be sent to the taxpayer's attorney is not a direction to make such a change. Language to the effect that the taxpayer directs that all communications concerning his tax matters or a proposed deficiency for a specific taxable year be mailed to him at this attorney's address might accomplish the purpose. See Rev. Proc. 61–18, 1961–2 C.B. 550. But such is not the case here. The same revenue procedure provides that where the power of attorney merely directs that *copies* be sent to the attorney, that fact alone does not effect a change of the last-known address of the taxpayer. Each case must still turn on its own facts.

---

[2] The administrative problems involved herein probably could have been entirely avoided if the petitioner's attorney had sent the properly notarized power of attorney to respondent on Mar. 18, 1966, or if respondent had notified Erwin that the power of attorney was regarded as incomplete.

The case law supports respondent's position. See *Draper Allen*, 29 T.C. 113 (1957), where the taxpayer filed a power of attorney requesting the Commissioner to send copies of all communications to his attorney. The notice of deficiency was sent to the taxpayer and not the attorney. This Court held that failure to send a copy to the attorney for the petitioner did not affect the time within which the taxpayer must file his petition if the notice was sent to the taxpayer at his last-known address. See also *Clement Brzezinski*, 23 T.C. 192 (1954).

Nor is it material that respondent dealt with the petitioner's attorney prior to the issuance of the notice of deficiency. In *Bert D. Parker*, 12 T.C. 1079 (1949), the taxpayer filed a power of attorney which directed that correspondence and documents be sent to his attorney. The notice of deficiency was mailed to the taxpayer and not to his attorney. We held there was no requirement in the power of attorney that the notice of deficiency be sent to the attorney. We also stated that the fact that other letters with reference to the taxpayers and the taxable years involved were mailed by the Commissioner to the attorney did not control. To the same effect, see *Estate of George F. Hurd*, 9 T.C. 681 (1947), where it was held that a reference to the attorney's address in the power of attorney is not a notice that the address in the tax return is no longer the residence and the proper address of the taxpayer. In that case we said it was immaterial that the Commissioner had used the attorney's address to communicate with the taxpayers prior to the issuance of the deficiency notice.

Petitioner relies heavily on the opinion in *Tenzer* v. *Commissioner*, 285 F. 2d 956 (C.A. 9, 1960), and says that it is "almost identical" to the instant case. We cannot agree. We think the Tenzer case is clearly distinguishable. In that case the Court of Appeals emphasized that the Commissioner abandoned his notice sent by registered mail on June 26, 1958, when he chose to make "actual personal service" of the deficiency notice on the taxpayer on July 24, 1958. That started a new 90-day period running for filing a petition in the Tax Court. By contrast, the respondent in this case did not abandon his mailing method of service in favor of personal service. We seriously doubt whether the Court of Appeals would take the liberty of extending its *Tenzer* rationale to cover this situation since it specifically stated (285 F. 2d at 958) :

We see a consistent pattern in the cases that the Commissioner customarily uses registered (or now certified) mail. Well he may, because with that he has some idea where he stands under the statute.

In its later opinion in *Cohen* v. *United States*, 297 F. 2d 760 (C.A. 9, 1962), the Court of Appeals commented (p. 772) :

We think it clear that the Congress, when it "authorized" service by registered mail, did not intend to require actual receipt by the addressee of the letter. Rather, it permitted the use of a method of giving notice that would ordinarily result in such receipt. Failure to petition the Board of Tax Appeals (now the Tax Court)

within 90 days of the mailing of the letter does deprive the taxpayer of a privilege, namely, withholding payment of the tax pending determination of the validity and correctness of the assessment by the Board (Tax Court) (§ 272(a)), and litigating the matter before the Board (Tax Court). (See *Ginsburg* v. *United States*, 1 Cir., 1960, 278 F. 2d 470.) But it does not deprive him of all right to contest the validity or correctness of the assessment; he can still do this by paying the tax, filing a claim for refund, and if that be denied, suing in the District Court or Court of Claims. (e.g. *Van Antwerp* v. *United States*, 9 Cir., 1937, 92 F. 2d 871.) And if he wins, he gets his money back, normally, with interest. We have no doubt that the Congress, if it chose to do so, could have required the taxpayer to pay first and then litigate, in all cases. (*Phillips* v. *Commissioner*, 283 U.S. 589, 51 S. Ct. 608, 75 L.Ed. 1289, 1931.) Particularly because this is so, we find no constitutional weakness in the use of the authorized method of sending the 90-day letter, even in those cases where it may not actually be received.

See 'and compare *Boren* v. *Riddell*, 241 F. 2d 670 (C.A. 9, 1957); *Dolezilek* v. *Commissioner*, 212 F. 2d 458 (C.A.D.C., 1954); *Eppler* v. *Commissioner*, 188 F. 2d 95 (C.A. 7, 1951); and the recent case of *DeWelles* v. *United States*, 378 F. 2d 37 (C.A. 9, 1967).

We likewise reject the estoppel arguments advanced by petitioner for the reasons previously stated. There is no merit in invoking the doctrine of estoppel against the Commissioner under these circumstances.

## II

Next we turn to petitioner's alternative contention that the provisions of Public Law 89–332, now codified as 5 U.S.C. App. secs. 1012 and 1013,[3] apply to this case and that section 2 thereof was in-

[3] Pub. L. 89–332, approved Nov. 8, 1965, provides as follows:

Sec. 1. (a) Any person who is a member in good standing of the bar of the highest court of any State, possession, territory, Commonwealth, or the District of Columbia may represent others before any agency upon filing with the agency a written declaration that he is currently qualified as provided by this subsection and is authorized to represent the particular party in whose behalf he acts.

(b) Any person who is duly qualified to practice as a certified public accountant in any State, possession, territory, Commonwealth, or the District of Columbia may represent others before the Internal Revenue Service of the Treasury Department upon filing with that agency a written declaration that he is currently qualified as provided by this subsection and is authorized to represent the particular party in whose behalf he acts.

(c) Nothing herein shall be construed (i) to grant or deny to any person who is not qualified as provided by subsection (a) or (b) the right to appear for or represent others before any agency or in any agency proceeding; (ii) to authorize or limit the discipline, including disbarment, of persons who appear in a representative capacity before any agency; (iii) to authorize any person who is a former officer or employee of an agency to represent others before an agency where such representation is prohibited by statute or regulation; or (iv) to prevent an agency from requiring a power of attorney as a condition to the settlement of any controversy involving the payment of money.

(d) This section shall not be applicable to practice before the Patent Office with respect to patent matters which shall continue to be covered by chapter 3 (sections 31 to 33) of title 35 of the United States Code.

Sec. 2. When any participant in any matter before an agency is represented by a person qualified pursuant to subsection (a) or (b) of section 1, *any notice or other written communication required or permitted to be given to such participant in such matter shall be given to such representative in addition to any other service specifically required by statute.* If a participant is represented by more than one such qualified representative, service upon any one of such representatives shall be sufficient. [Emphasis supplied.]

Sec. 3. As used in this Act, "agency" shall have the same meaning as it does in section 2(a) of the Administrative Procedure Act, as amended (60 Stat. 237, as amended).

tended to and does modify section 6212 of the Internal Revenue Code in two respects: (1) by changing the requirement of what constitutes "notice" and (2) by changing the last-known address to include that of the taxpayer's representative as well as that of the taxpayer. Petitioner asserts that his attorney complied with the requirements of section 1(a) of Public Law 89–332; that the language of the statute is plain and unequivocal in requiring that any notice "shall be given to such representative in addition to any other service specifically required by statute"; that the use of the word "shall" makes the statute mandatory; and that notice to a taxpayer alone is no longer a sufficient notice if the taxpayer is represented by an attorney qualified under section 1(a). In effect, it is contended that unless duplicate originals of all notices of deficiencies are served upon both the taxpayer and his attorney the mailing requirements of sections 6212(a) and 6212(b)(1) have not been satisfied. Respondent, on the other hand, takes the position that the provisions of Public Law 89–332 are not applicable here because the petitioner's attorney has not filed the written declaration of current qualification required by section 1(a) and, alternatively, that the mailing requirements of section 6212 and the power of attorney requirements of sections 601.502(c) and 601.504(a)(5)(i)(ii), Treasury Procedural Rules, were not modified, amended or revised by the enactment of Public Law 89–332.[4] Consequently, respondent argues that the deficiency notice was not invalidated by reason of his failure to send a copy thereof to petitioner's attorney. Again we agree with respondent.

Petitioner cites no authority to support his contentions. He relies solely on the wording of Public Law 89–332. The legislative purpose of the statute is clear; it was designed to do away with agency established requirements for licensed attorneys and certified public accountants so that persons might be represented by any attorney or certified public accountant in good standing in matters before Federal agencies. See S. Rept. No. 755, 89th Cong., 1st Sess., and H. Rept. No. 1141, 89th Cong., 1st Sess., p. 4170. The intent of Congress was not to amend the Internal Revenue Code, but to allow all licensed attorneys and certified public accountants in good standing to practice before Federal agencies *after they have met certain specified requirements*. The first such requirement is that an attorney must file with the agency

---

[4] The purpose of Pub. L. 89–332 is stated in S. Rept. No. 755, 89th Cong., 1st Sess., as follows:

"This legislation is designed to do away with agency-established bars for attorneys who appear before certain Federal administrative agencies. In those agencies which require that lawyers become members of such bars to represent clients before the agency, lawyers have met with delays attempting to deal with even the most routine tasks. The responses of attorneys prompted by this bill's introduction cite examples of difficulty in attempting to bring even simple matters before these agencies.

The bill would do away with agency-established admission requirements for licensed attorneys, and thus allow persons to be represented before all Federal agencies by counsel of their choice. It would also require the agencies to deal with the counsel so selected."

(here the Internal Revenue Service) a written declaration that he is currently a member in good standing of the bar of the highest court of any State and that he is authorized to represent the particular party in whose behalf he acts. See sec. 1(a), Pub. L. 89–332. In addition, he must file a power of attorney with that agency if it so requires. See sec. 1(c), Pub. L. 89–332. Then, and only then, is an attorney entitled to receive the deficiency notice which is also sent to the taxpayer. No declaration of any kind was filed with respondent by the petitioner's attorney, let alone one which complied with the statute. Certainly the incomplete power of attorney signed by petition on March 17, 1966, cannot be construed as a written declaration by his attorney that he was a member in good standing of a bar of the highest court of any State. The power of attorney was not signed by Erwin and it did not contain the required information. It was a statement by the petitioner, not a declaration by his attorney.

It is true that the statute does not specify any particular form for a written declaration.[5] It does, however, require a written statement containing certain information to be filed with the agency. Here Erwin made no declaration in writing to the Internal Revenue Service that he was a member in good standing of the bar of the State of Oregon or any other State. He did write a letter to revenue agent Carrier enclosing an incomplete power of attorney which, of course, did not purport to be a declaration by him and did not contain the required information. Therefore, since Erwin did not file a written declaration, as required by section 1(a) of Public Law 89–332, he was not entitled to receive under section 2 a copy of the deficiency notice sent to petitioner. Under the circumstances the provisions of Public Law 89–332 are not applicable.[6]

---

[5] See Rev. Proc. 66–44, 1966–2 C.B. 1252, which provides, in part, as follows:

SEC. 4. PRACTICE WITHOUT ENROLLMENT

.01  Attorneys and certified public accountants, who are in good standing and not currently under disbarment or suspension to practice before the Service, are authorized to practice upon filing a written declaration in accordance with provisions of section 10.3 of Circular 230.

.02  Pending issuance of amended regulations on Conference and Practice Requirements and issuance of a standard declaration form for nationwide use, locally developed declaration forms will be available in district offices for the convenience of attorneys and certified public accountants. To facilitate association of declarations with appropriate return(s) or other tax matter(s), a space is provided on the form for entry of a description of the specific matter(s) and period(s) involved.

[6] Even if we assume *arguendo* that the provisions of Pub. L. 89–332 apply, we think respondent's failure to send a copy of the deficiency notice to Erwin did not invalidate the mailing of such notice pursuant to sec. 6212 of the Internal Revenue Code. Pub. L. 89–332 does not purport to amend, modify, or revise any section of the Internal Revenue Code. It provides only for *an additional service* upon the taxpayer's attorney. It has nothing to do with the requirements of mailing a statutory notice of deficiency to a taxpayer. Sec. 6212 of title 26 and sec. 1013 of title 5 are in unrelated titles of the Judicial Code and pertain to service upon two entirely different individuals. Congress did not contemplate or intend that the notice provision of Pub. L. 89–332 would modify sec. 6212. Moreover, we view the notice requirement of sec. 2 as directory rather than mandatory. Whether a statute is mandatory or directory must be ascertained from a consideration of the entire

*III*

Having determined that the notice of deficiency dated June 8, 1966, was valid and was sent to petitioner at his last-known address, it follows that the petition filed in this proceeding on December 22, 1966, was untimely. Section 6213(a) has been held to be jurisdictional and this Court has no jurisdiction unless the petition is timely filed. *Nathaniel A. Denman*, 35 T.C. 1140 (1961). Accordingly, respondent's motion to dismiss this case for lack of jurisdiction will be granted.

*An appropriate order will be entered.*

statute, its nature, its object, and the consequences which would result from construing it one way or the other. See *Holbrook* v. *United States*, 284 F. 2d 747 (C.A. 9, 1960) ; and 3 Sutherland, Statutory Construction (3d ed.), sec. 5803. And whether a mandatory or directory construction should be given to a statutory provision is often determined by an expression in the statute of the result that will follow noncompliance with the provision. If a statute is mandatory, in addition to requiring the doing of the things specified, it prescribes the result that will follow if they are not done ; if directory, its terms are limited to what is required to be done. Sutherland, Statutory Construction, *supra*, sec. 5818. Since Congress did not impose sanctions in this statute to secure compliance for failure to give notice to the attorney, it seems to us that failure to send a copy of a deficiency notice to the attorney of a taxpayer would not destroy the validity of an otherwise good notice under sec. 6212. In any event, we believe the provisions of Pub. L. 89–332 do not operate in such a way as to affect the jurisdictional processes of this Court.